# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 20-2070V
UNPUBLISHED

| | |
|---|---|
| TIMOTHY SISNEROS,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: April 17, 2023<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Statutory Six Month<br>Requirement Influenza (Flu) Vaccine;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA,* for Petitioner.

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC,* for Respondent.

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On December 30, 2020, Timothy Sisneros filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1. Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine he received on September 30, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. Respondent seeks dismissal of the claim, arguing that Petitioner has failed to satisfy the statutory severity requirement set forth in 42 U.S.C. ¶300aa-11(c)(1)(D)(i). ECF No. 24.

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner has more likely than not suffered the residual effects of his alleged vaccine-related injury for more than six months, and that Petitioner has satisfied the other requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I. Relevant Procedural History

On November 15, 2022, about 11 months after the case was initiated, Respondent filed a Motion to Dismiss and Rule 4(c) Report ("Mot.") arguing that Petitioner had not established entitlement to compensation. ECF No. 24. Respondent argues that Petitioner cannot establish that he suffered the residual effects of his injury for more than six months as required by the Vaccine Act. Mot. at 8-9.[3]

Petitioner filed a Response to the Motion to Dismiss ("Resp.") on November 15, 2022. ECF No. 25. Respondent declined to file a reply. *See* ECF No. 26.

The matter is now ripe for adjudication.

## II. Factual History

Petitioner received an influenza vaccination in his left arm on September 30, 2019. Ex. 2 at 3. Petitioner's pre-vaccination medical history is significant for a motorcycle accident in 2006 that left him with multiple fractures and a right shoulder injury. Ex. 1 at ¶4; Ex. 6 at 34. Since the accident, Petitioner has suffered from chronic right shoulder pain due to osteoarthritis, although he had no other history of pain or dysfunction in his left shoulder. Ex. 6 at 34.

At the time of his vaccination, Petitioner stated that he "felt a pinch and began to bleed from the site of injection." Ex. 1 at ¶6. On October 14, 2019 (two weeks later), Petitioner presented to urgent care complaining of worsening pain and range of motion since his flu shot. Ex. 3 at 17. He was diagnosed with a "complication of vaccination" and referred to physical therapy. *Id.*

On October 29, 2019, Petitioner had an initial physical therapy evaluation. Ex. 4 at 4. He reported severe pain (7/10) and stated that he "could not do any movements from the left shoulder." *Id.* On exam, Petitioner had significantly decreased range of motion and "significant pain of the left shoulder all directions." *Id.* The therapist anticipated treatment "1-2 times per week x 4-6 weeks . . . followed by once a week for 10-12 weeks." *Id.* Petitioner had four sessions of physical therapy through December 13, 2019. *Id.* at 6-7, Ex. 5 at 4-7.

---

[3] Respondent concedes that the records otherwise support a Table SIRVA injury. *See* Rule 4 Report at 8, footnote 5.

On January 8, 2020, Mr. Sisneros presented to his primary care provider ("PCP"). Ex. 6 Part I at 34. He stated that his "left shoulder used to be fine until he got a flu shot in Walgreens a couple of months ago." *Id*. at 35. He could not "abduct his shoulder or lift weights because" of the pain. *Id*. He stated that his shoulder had not improved with physical therapy. *Id*. On exam, Petitioner's abduction was limited to 90 degrees and he had pain with external rotation and with palpation. *Id*. He was referred to sports medicine for a possible steroid injection. *Id*. at 36. On January 20, 2020, Petitioner had left shoulder x-rays, which showed mild osteoarthritis, a small lesion on the humeral head, and chronic left rib and clavicle deformities. *Id.* at 102.

On February 5, 2020, Petitioner returned to physical therapy for his fifth session. Ex. 5 at 8. He reported that his shoulder had not improved. *Id*. Petitioner stated he had an MRI scheduled for February 10, 2020, but no MRI was done. *Id*. On exam, Petitioner's range of motion was unchanged and he reported "constant pain throughout" the session. *Id*. at 9.

Petitioner was discharged from physical therapy on February 14, 2020, four months and 15 days after his vaccination, after his sixth treatment. Ex. 5 at 10. Petitioner "showed moderate improvement of active range of motion, but still had sharp pain with the end range." *Id*. His functional limitations were described as "at least moderate" and his SPADI score was 70% (with 0% meaning completely functional). *Id*. Petitioner was encouraged to continue thereafter his home exercise program. *Id*.

In his Supplemental Declaration, Petitioner stated that his father was diagnosed with cancer in November 2019 and was cared for in a rehabilitation facility until March 2020, when the Pandemic caused his family to move his father home so they could see him in-person without restrictions. Ex. 23 at ¶6, 8. Petitioner described his continuing left shoulder pain and reduced range of motion during this time, despite doing his home exercises twice a day. *Id.* at ¶8-9. He stated that he unsuccessfully tried to schedule an MRI, but was told that it would be "at least 7 months." *Id.* During his father's illness and until his death in July 2020 (during the Pandemic), Petitioner spent as much time as possible with his father and avoided public places to protect his father's health. *Id*. at ¶11.

Six months later, on August 25, 2020, Petitioner returned to physical therapy for an evaluation. Ex. 7 at 2. He stated that he had stopped physical therapy previously due to the Covid-19 Pandemic and his father's recent death. *Id.* On exam, Petitioner had pain with all directions of movement and reduced range of motion. *Id.* His SPADI score was 80%. *Id*. at 3. After the August 25, 2020 evaluation, Petitioner was unable to return to physical therapy treatment due to proceedings relating to his father's estate, and then to losing his job and health insurance. Ex. 23 at ¶12-15.

### III.    Applicable Legal Standards

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to

4

document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.     Finding of Fact - Severity

At issue is whether Petitioner has provided preponderant evidence that his vaccine injury continued for more than six months, as required by 42 U.S.C. ¶300aa-11(c)(1)(D)(i). Mot. at 8-9. Respondent argues that Petitioner has not satisfied the severity requirement because he was discharged from physical therapy after four months and 15 days, and did not seek additional medical treatment for another six months. *Id*. at 9. Although Respondent acknowledges that Petitioner has explained the gap in treatment in his declarations, Respondent notes that even when Petitioner returned to physical therapy in August 2020, he attended only one session before another seven-month gap in treatment. *Id.*

In this case, Petitioner received his vaccination on September 30, 2019. Ex. 2 at 3. It is undisputed that, in order to establish at least six months of residual effects, Petitioner must establish that his residual symptoms continued until at least March 30, 2020. At the time of his discharge from physical therapy treatment on February 14, 2020 (which was 45 days shy of the six-month mark), Petitioner continued to demonstrate a need to continue formal physical therapy. Ex. 5 at 10-11. Although he had made some progress with range of motion, the therapist noted that Petitioner continued to have sharp

pain at the end ranges. *Id*. at 11. The therapist rated Petitioner's functional limitations as "at least moderate" and his SPADI score was 70% (with 0% meaning completely functional). *Id*. Petitioner was encouraged to continue his home exercise program. *Id*. Petitioner had not come close to completing the 14-18 weeks of physical therapy planned during his initial evaluation. Ex. 4 at 4.

Respondent does not dispute that Petitioner has provided a reasonable explanation for the gap in his treatment between February and August 2020. Mot. at 9. Petitioner persuasively described how his father's illness with cancer, coupled with the Covid-19 Pandemic, caused him to forego further treatment until after his father's death on July 19, 2020. Ex. 23 at ¶6, 8-9, 11-12. But during that time, Petitioner continued to suffer from pain and limited range of motion, and continued to do his home exercises. *Id*. at 8-9, 11. Petitioner's statements are consistent with the medical records. *See* Ex. 7 at 2 (Petitioner stated that had stopped physical therapy previously due to the Covid-19 Pandemic his father's recent death.).

Despite these facts, Respondent argues that because Petitioner only attended one physical therapy session on August 25, 2020 before another gap in treatment, Petitioner has not provided preponderant evidence that his symptoms lasted for more than six months after his vaccination. Mot. at 9. But this very fact allows for the conclusion that Petitioner *still had* symptoms related to his vaccine-injury *on August 25, 2020* – more than ten months after his vaccination – when he returned to treatment. The record of that physical therapy evaluation reveals that Petitioner had similar, and slightly worsened, symptoms to the symptoms he had in February 2020. Ex. 7 at 2-3 (Petitioner had pain with all directions of movement and reduced range of motion. His SPADI score was 80%.).

Certainly, Petitioner's gap in treatment, whatever the reason, may impact the damages he is awarded for his injury, since they suggest that his overall injury was mild enough to tolerate for long periods of time without medical assistance. Nevertheless, the medical records, especially when paired with Petitioner's declarations, provide preponderant evidence that Petitioner suffered the residual effects of his vaccine-injury at least through August, 25, 2020, which is more than six months after his vaccination.

## V. Ruling on Entitlement

### a. Requirements for Table SIRVA

Respondent has not contested Petitioner's proof on the specific elements of a Table SIVRA. *See* Mot. at 8, footnote 5. In fact, Respondent states that "DICP has determined that Petitioner's medical course is consistent with a SIRVA as defined by the

6

Table. Specifically, the onset of Petitioner's pain occurred within forty-eight hours of his receipt of the flu vaccination; Petitioner does not have any pre-vaccination history of pian, inflammation, or dysfunction in his left shoulder; the pain and reduced ROM are limited to the shoulder in which Petitioner received the vaccination; and there are no other conditions or abnormalities present that would explain Petitioner's symptoms." *Id.*

In view of Respondent's position and the evidence of record, I find that Petitioner has provided preponderant evidence to establish that he suffered a Table SIRVA injury.

    b. *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows Petitioner received the flu vaccine in his left arm at a Walgreens Pharmacy in Albuquerque, N.M. Ex. 2 at 3; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that he has not filed any civil action or received any compensation for his vaccine-related injury, and there is no evidence to the contrary. Ex. 1 at ¶26-27; *See* Section 11(c)(1)(E) (lack of prior civil award). And as noted above, severity is also established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

**Conclusion**

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

    IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master